# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.   1:17CR512 |
| | ) |                    1:17CR513 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| NELSON BENITEZ, JR., | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Before the Court is Defendant Nelson Benitez Jr.'s Motion for Compassionate Release. (Docs. 321 & 322[1]). For the following reasons, the Court **GRANTS** Defendant's Motion.

### I. BACKGROUND

On December 6, 2017, a Grand Jury indicted Defendant with two separate indictments involving two distinct drug trafficking organizations. On January 10, 2019, Defendant executed a Plea Agreement and pleaded guilty to all counts in both Indictments. On May 7, 2019, the Court sentenced Defendant to 42 months imprisonment and 3 years of supervised release. Defendant is 36 years old and currently placed with a Residential Reentry Management office in Cincinnati, Ohio. To date, he has served over 33 months.

On July 27, 2020, Defendant filed his Motion for Compassionate Release. (Docs. 321 & 322). The Government opposed Defendant's Request. (Doc. 331 & 332). On September 9,

---

[1] Defendant was indicted in two separate cases, 1:17CR512 and 1:17CR513. For purposes of this Order, the Court will cite to documents on the Docket of Case Number 1:17CR512, unless stated otherwise.

2020, Defendant supplemented the Record with additional medical documents, as well as a brief update on Defendant. (Doc. 339 & 340).

## II. LAW & ANALYSIS

### A. Standard of Review

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, in certain circumstances, a defendant may ask the court to modify a sentence, otherwise known as "compassionate release." *Id.* at § 3582(c)(1)(A). Before doing so however, a defendant must exhaust his administrative remedies. *Id.*; *United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020). Both parties agree that Defendant here has exhausted his administrative remedies. (*See* Doc. 331, PageID: 2523).

After a defendant has exhausted his administrative remedies, he may ask the court for compassionate release. After considering the § 3553(a) factors, a district court may reduce a term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission." § 3582(c)(1)(A)(i).[2]

That applicable policy statement is outlined in § 1B1.13 of the Sentencing Guidelines. There, the Commission lists 'extraordinary and compelling reasons' as: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) Other Reasons, a 'catch-all' provision for extraordinary reasons outside those listed. U.S.S.G. § 1B1.13, n. 1.

Before a court looks at the 'extraordinary and compelling reasons' supporting defendant's early release, the court must first determine that defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g). *Id.* at § 1B1.13(2). Section 3142(g) list four

---

[2] There is a second scenario that entitles a defendant relief based on his or her age, but that section is not applicable to Defendant. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

factors for the courts to consider whether a defendant poses a danger to the community. Those factors include: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to the community. 18 U.S.C. § 3142(g)(1)–(4).

Ultimately, "[t]he defendant has the burden to show he is entitled to a sentence reduction" under § 3582(c)(1)(A). *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

**B.     Danger to the Community**

The Court finds that Defendant does not present the same level of danger to the community. Defendant is a 36-year-old individual and has performed well while in custody. The Bureau of Prisons recently released Defendant to a halfway home. (*See* Doc. 339, PageID: 2586). Defendant worked while imprisoned and participated in programing to prepare for a successful release. And, as discussed in more detail below, he is in poor health.

While it is true that Defendant participated in two separate drug conspiracies, it appears his drug addiction fueled his behavior. He has done well to avoid further instances of substance abuse since his arrest. Moreover, the Court is confident that it can impose certain conditions of supervised release to mitigate whatever danger Defendant presents to the community.

Finally, consideration of Defendant's criminal history cuts both ways. While true he has prior convictions for violence and drugs, Defendant still qualified for the safety valve provision under 18 U.S.C. § 3553(f). The length of the Defendant's current incarceration, plus the conditions of release imposed below, adequately considers Defendant's criminal history.

Accordingly, the Court finds Defendant does not present a danger to the community.

### C. Extraordinary and Compelling Reasons

Defendant has demonstrated that 'extraordinary and compelling reasons' warrant a sentence reduction. Defendant has presented evidence that he suffers from a cerebral aneurysm and undiagnosed cardiology issues. The Bureau scheduled Defendant for a follow-up cardiology consultation, but that consultation never occurred. More concerning is the allegation that Defendant is not receiving further treatment at the halfway home because of COVID concerns.

Without a clear diagnosis of his cardiac issues, the Court finds Defendant's continued presence at the halfway home presents an extraordinary and compelling medical reason for his early release. According to the Centers for Disease Control and Prevention, conditions that affect the heart and the supply of blood to the brain "might increase" an individual's risk of severe complications from COVID.[3] Defendant presented evidence of both issues.

Because the Bureau will not allow Defendant to undergo further tests for his cardiac issues, coupled with the presence of COVID-19, the Court finds there are extraordinary and compelling medical reasons to release Defendant.

### D. Section 3553(a) Factors

Finally, the § 3553(a) factors weigh in favor of early release. In addition to those facts previously discussed, the Court believes the sentence that Defendant served is adequate to accomplish the sentencing goals highlighted in § 3553(a). The Bureau projected Defendant's release to supervision on December 1, 2020. It recently released Defendant to a halfway home to assist with the transition back into society. By granting compassionate release at this stage, the Court allows Defendant to seek the necessary medical treatment for his medical conditions. And

---

[3] CENTERS FOR DISEASE CONTROL AND PREVENTION, "People with Certain Medical Conditions" (updated Sept. 11, 2020), *available at*: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Sept. 14, 2020).

with the added conditions of supervision imposed below, Defendant's sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing as directed to district courts by Congress.

### III. CONCLUSION

Because Defendant demonstrated 'extraordinary and compelling reason' for release, the Court **GRANTS** Defendant's Request for Compassionate Release. (Docs. 321 & 322). Defendant's Sentence is reduced to time served. Defendant's term of supervised release remains the same at 3 years. In addition to the standard and special conditions previously imposed, Defendant must submit a negative COVID-19 test prior to his release. He must provide proof of medical insurance to his Probation Officer. Upon release from the facility, the Court imposes home detention[4] until December 1, 2020 at the location approved by the Probation Office. Defendant must also report to the Probation Office within 72 hours of his release from the facility. Furthermore, Defendant must provide his Probation Officer with the results from further medical tests and treatments. Finally, Defendant must follow all CDC recommendations for "at-risk" persons.

**IT IS SO ORDERED.**

      s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**

**Dated: October 2, 2020**

---

[4] Home detention requires Defendant to remain at home at all times except for approved and scheduled absences for employment, education, religious activities, treatment, attorney visits, court appearances, court-ordered obligations, or other activities as approved by his Probation Officer.